IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19 CV 167 MR WCM

RAE PHILLIPS,                        )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )      MEMORANDUM AND
                                     )      RECOMMENDATION
ANDREW SAUL,                         )
Acting Commissioner of the Social    )
Security Administration,             )
                                     )
                    Defendant.       )
_____    )

This matter is before the Court on the parties' cross motions for summary

judgment (Docs. 11, 14), which have been referred to the undersigned pursuant

to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs,

and relevant legal authority, the undersigned recommends that Plaintiff's

motion for summary judgment be granted and the Commissioner's motion for

summary judgment be denied.

I. **Procedural History**

On April 3, 2017, Plaintiff Rae Phillips ("Plaintiff") filed an application

for supplemental security income benefits. Transcript of Administrative

Record ("AR"), pp. 206-215. Plaintiff's claim was initially denied on July 11,

2017, and subsequently upon reconsideration. AR pp. 109 & 127. Plaintiff

thereafter filed a written request for a hearing and a hearing was held on May

1

24, 2018, in Charlotte, North Carolina, where Plaintiff appeared and testified. AR pp. 60-83. Plaintiff was represented by counsel at the hearing.

On August 2, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 37-53. The Appeals Council denied Plaintiff's request for review of that decision on January 5, 2019, and thereafter granted Plaintiff an extension of time through April 4, 2019 to file a civil action. AR pp. 1-6 & 8-10.

On April 4, 2019, Plaintiff filed the instant action. See Doc. 1. Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See, 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the

2

claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant throughout the first four steps of this five-step process to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant is capable of performing other work, considering the claimant's RFC, age, education, and past work experience. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

## III.  Plaintiff's Allegations and the ALJ's Decision

In her initial claim for disability benefits, Plaintiff alleged she was unable to work due to mitrol valve prolapse, panic disorder, anxiety, phobia, and major depression. See AR pp. 95-96. During the May 24, 2018 hearing, Plaintiff testified that she was unable to work because

> I can't stay by myself, I can't go out alone, I don't drive

3

alone, I have a lot of difficulties with concentration, I'm on a couple of medications, but sometimes I just – all I can do is lay down after I've taken them.

AR p. 66.[1]

In his August 2, 2018 Decision, the ALJ determined that Plaintiff had the severe impairments of "obesity, anxiety disorder, pain disorder and mitral valve prolapse." AR p. 42. The ALJ further found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 416.967(b) except she is limited to frequent climbing, balancing, stooping, kneeling, crouching and crawling. She should avoid concentrated exposure to hazards. The claimant is capable of simple, routine and repetitive tasks in a stable work environment for 2-hour intervals throughout the day for the duration of the workday at a non-production pace with no assembly line work. She is further limited to no more than occasional interaction with the public and supervisors.

AR p. 44.

Utilizing this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but that Plaintiff could perform other work, including the representative occupations of unskilled marker, router, and photocopy machine operator, such that Plaintiff was not disabled since April 3, 2017 (Plaintiff's application date). AR p. 53.

---

1 During the May 24, 2018 hearing, Plaintiff's counsel likewise indicated that her "anxiety, panic disorder, and phobias" were Plaintiff's most disabling conditions but also noted that Plaintiff suffered "from a history of microvalve prolapse and regurgitation, vertigo neuropathy, hypertension…." AR p. 63.

4

## IV.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applied the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Analysis

Plaintiff raises four issues in her Motion for Summary Judgment. First, Plaintiff argues that the ALJ failed to consider the effects of her obesity. Second, Plaintiff contends that the ALJ's development of her RFC is not supported by substantial evidence. Third, Plaintiff argues that the ALJ improperly relied on Plaintiff's noncompliance with treatment recommendations. Fourth and finally, Plaintiff asserts that the ALJ failed to resolve an apparent conflict between the representative occupations identified by the vocational expert ("VE") and Plaintiff's ability to do simple, routine, and repetitive tasks.

### A. Consideration of Plaintiff's Obesity

"When a claimant has multiple impairments, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that an ALJ consider the combined effect of all those impairments in determining the claimant's RFC and his disability status." Harris v Colvin, No. 1:15-cv-37100-RMG-SVH, 2016 WL 3535814, at *14 (D.S.C. June 9, 2016) (citing Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). Although obesity is no longer a listed impairment, Social Security Ruling 02-1p requires consideration of obesity throughout the sequential analysis. SSR 02-1p, 2002 WL 34686281. That is, generally "[t]he ALJ must evaluate a claimant's obesity at every step of the sequential evaluation." Henson v.

6

Berryhill, No. 1:15-cv-123-RJC, 2017 WL 5195882, at * 4 (W.D.N.C. Nov. 9, 2017) (citing, *inter alia*, SSR 02-1p, 2002 WL 34686281).

However, "there are exceptions to the duty of discussing obesity." Henson, 2017 WL 5195882, at * 5. Courts have excused an ALJ's failure to discuss obesity specifically where a plaintiff did not identify any weight-related issues that made her unable to work, medical records did not indicate that a plaintiff had any weight-related functional limitations, or any functional limitations that may have been associated with obesity were otherwise adequately accounted for by the ALJ. See Greer v. Colvin, No. 1:16-cv-397-DSC, 2017 WL 3090275, at * 2 (W.D.N.C. July 20, 2017) (rejecting plaintiff's argument that the ALJ erred by failing to evaluate obesity where medical records did not indicate any functional limitations "caused or aggravated by Plaintiff's weight" and plaintiff did not identify any weight-related issues when asked why she was unable to work); Henson, 2002 WL 34686281 at *5 (ALJ's failure to mention a claimant's obesity was excused because the claimant failed to list obesity in her application for disability benefits and, critically, the ALJ relied on medical records that adequately portrayed claimant's obesity); Barnes v. Astrue, No. 1:11CV285-MR-DSC, 2012 WL 5457348, at * 3 (W.D.N.C. Oct. 16, 2012) ("No medical provider has ever treated Plaintiff for obesity. The record does not establish any functional limitations caused by her obesity that are not accounted for in the assessed RFC.").

7

Here, the ALJ found Plaintiff's obesity to be a severe impairment at step two of the sequential evaluation process but did not discuss Plaintiff's obesity explicitly in the later parts of his Decision. AR p. 42.[2] In her briefing, Plaintiff argues that her "obesity combined with her mitral valve prolapse and depression can contribute to her complaints of fatigue and lack of energy" and that the ALJ failed to consider "the effect of [her] obesity on her cardiopulmonary disorders or other impairments at any stage of the evaluation process." Doc. 12, pp. 12 & 13.

During the May 24, 2018 hearing, Plaintiff testified that she was unable to be alone, had "difficulties with concentration," and that her anxiety made her heart race and made it difficult to catch her breath. AR pp. 66 & 75. Plaintiff did not discuss fatigue or a lack of energy as functional limitations affecting her ability to work.[3] Regardless, the ALJ did consider possible limitations stemming from drowsiness caused by Plaintiff's medications, and

_____

2 Plaintiff did not list obesity in her application for disability. See AR pp. 95-96 & 110.

3 To support her complaints of fatigue, Plaintiff cites to a mental Medical Source Statement ("MSS") in which Dr. Jonathan Stoudmire noted that Plaintiff suffered from fatigue and a January 17, 2018 treatment record reflecting that Plaintiff self-reported she had felt fatigued for three weeks. See AR pp. 51, 739-740, 797. The ALJ explained that he assigned little weight to Dr. Stoudmire's opinions regarding Plaintiff's mental limitations because Dr. Stoudmire's treatment records "showed no more than mild to moderate abnormalities on mental status examinations." AR p. 51. Plaintiff does not challenge the ALJ's assignment of "little weight" to the mental MSS. AR pp. 739-744.

8

found that Plaintiff had moderate limitations in concentration, persistence, and pace.  AR p. 43.

With respect to Plaintiff's functional limitations stemming from her cardiovascular issues, the ALJ discussed Plaintiff's medical records reflecting treatment for cardiovascular problems, including treatment records indicating that Plaintiff's hypertension was controlled with medication.  See AR p. 45 (discussing treatment note from Dr. Binder of the Sanger Heart & Vascular Institute stating there was no evidence of prolapse and that Plaintiff's hypertension was well controlled, and treatment note from Dr. Kindel reflecting that "claimant's hypertension is adequately controlled with medications.").

"Plaintiff has the burden of showing that the ALJ failed to address evidence in the record indicating limitations resulting from her obesity." Barnes, 2012 WL 5457348, at *3 (citing Cosom v. Astrue, 11-294, 2012 WL 1898921, at * 4 (W.D.N.C. Feb. 23, 2012)).  As discussed above, the ALJ considered Plaintiff's complaints of drowsiness and addressed Plaintiff's medical records relevant to her cardiovascular issues.  Plaintiff does not explain what additional functional limitations should have been recognized by the ALJ.  Accordingly, remand is not warranted on this basis.

9

## B. Plaintiff's RFC

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson, 434 F.3d at 653. In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

Here, the ALJ determined that Plaintiff had the ability to perform light work with limitations to frequent[4] climbing, balancing, stooping, kneeling, crouching, and crawling. AR p. 44. The regulations define "light work" to require "a good deal of walking or standing, or when it involves sitting most of

---

4 In this context, "frequent" is defined as "occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." SSR 83-10, 1983 WL 31251.

the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 416.967(b).

Plaintiff argues that the ALJ failed to perform a function by function assessment prior to finding that Plaintiff could perform light work and overlooked symptoms and/or medication side effects.

## 1.    Function by Function Assessments

Although the ALJ did not conduct an independent function by function analysis in his August 2, 2018 Decision, "an ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." Herren v. Colvin, 1:15-cv-2-MOC, 2015 WL 5725903, at * 5 (W.D.N.C. Sept. 30, 2015) (collecting cases); see also SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996) (state agency consultants "are highly qualified…physicians and psychologists who are experts in the evaluation of medical issues in disability claims…."); Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) ("[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986) (emphasis in Smith)).

Here, the ALJ explained:

The undersigned considered the administrate [sic] findings of fact made by the State agency medical consultants and psychologists and weighed these opinions as statements from non-examining expert sources. The undersigned assigned substantial weight to the opinions of the State agency medical consultants who opined that the claimant suffered from "severe" impairments. The State agency medical consultants limited the claimant to "medium" work with postural and environmental limitations. Additionally, the State agency psychologists opined that the claimant was limited to work simple routine repetitive tasks in a low production setting with minimal social demands. However, the undersigned finds that the residual functional capacity as set out above is more restrictive and appropriate in light of the objective medical evidence at the hearing level and giving maximum credit to the claimant's testimony.

AR p. 49 (citations to administrative record omitted).

While the ALJ was entitled to rely on the function by function assessment provided by the state agency consultants, the ALJ failed to explain which functional limitations assigned by the agency consultants were not restrictive enough based on specific objective medical evidence. Nor did the ALJ explain how the ultimate limitation to "light" work provided "maximum credit" Plaintiff's testimony, especially considering the ALJ's evaluation of Plaintiff's credibility discussed below. The ALJ is required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). As the required logical bridge is lacking here, the undersigned will recommend remand on this

basis.

## 2. Medication Side Effects

Social Security Ruling 96–8p requires the ALJ to consider "all of the relevant evidence in the case record," in assessing RFC, including "side effects of medication." SSR 96–8p, 1996 WL 374184, at *5. Related to her argument that the ALJ failed to conduct the required function by function analysis of her abilities in developing her RFC, Plaintiff also argues that the ALJ failed to account for Plaintiff's medication side effects. Doc. 12, p. 17. Specifically, Plaintiff again asserts that her medications cause drowsiness that can affect her concentration as well as recurrent edema that affects her ability to stand or walk and requires her to elevate her legs. Doc. 12, p. 19.[5] Although the undersigned recommends remand for the reasons set forth in the preceding section, the ALJ's treatment of other records relevant to Plaintiff's edema is discussed below.

"The duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). While

---

[5] "Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." Siddons v. Colvin, No. 4:13-cv-92, 2014 WL 6893802, at * 4 (E.D.N.C. Dec. 5, 2014) (citing Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (citing Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002)). As noted above, the ALJ did consider possible limitations stemming from drowsiness caused by Plaintiff's medications, and found that Plaintiff had moderate limitations in concentration, persistence, and pace. AR p. 43.

13

some of the treatment notes reviewed by the ALJ reflect findings of leg edema/swelling, the Commissioner correctly points out that other treatment records reflect no edema.[6]  Additionally, while Dr. Kindel opined that Plaintiff was able to stand or walk for less than 2 hours in an 8-hour workday and would need to elevate her legs parallel to the ground 50% of the time, AR p. 736, the ALJ assigned "little weight" to that opinion based on the ALJ's determination that Dr. Kindel's treatment records did not support such limitations.  AR pp. 50-51.  The undersigned finds that substantial evidence supports the ALJ's treatment of Dr. Kindel's opinion.[7]

---

6 Cf. AR p. 731 (October 2017 note reflecting complaint of mildly painful swelling that typically occurred throughout the day when standing for longer than 30 minutes but resolved with foot elevation) with AR pp. 729 & 768 (February 5, 2018 & March 3, 2018 records reflecting no edema).

7 Dr. Kindel's treatment notes reflect over-the-counter treatment for Plaintiff's back pain, Plaintiff's normal range of motion and normal strength on musculoskeletal exam, normal gait, and lack of edema.  See AR p. 642 (August 11, 2016 note reflecting normal range of motion and normal strength; treatment plan of over-the-counter anti-inflammatory medications and stretching for complaints of low back and leg pain); p. 692 (August 14, 2017 treatment note reflecting plan for low back pain was ibuprofen and PT referral); p. 665 (January 30, 2017 exam reflecting Plaintiff's normal range of motion, normal strength); p. 733 (October 20, 2017 exam reflecting no edema); p. 807 (January 17, 2018 treatment note reflecting no lower extremity edema); p. 729 (February 5, 2018 exam reflecting no edema); p. 768 (March 3, 2018 exam reflecting no edema and normal gait).  While Plaintiff reported improvement of swelling after she elevated her legs in one treatment note, Dr. Kindel's notes do not include a recommendation that Plaintiff elevate her legs.  AR p. 731.  Although Plaintiff's medication list includes a cane, there is nothing in Dr. Kindel's notes reflecting that he limited Plaintiff to walking and standing for short amounts of time.  AR p. 729 (February 5, 2018 treatment note); p. 724 (February 15, 2018 treatment note).

## C. Plaintiff's Noncompliance

Plaintiff next argues that the ALJ improperly relied on instances of Plaintiff's noncompliance with her treatment regime when assessing Plaintiff's credibility. Doc. 12, pp. 21-26.

"Ordinarily, a court may…properly consider noncompliance by a claimant with prescribed treatment and failure to obtain treatment in evaluating a claimant's credibility." Baggett v. Astrue, No. 5:08-cv-165, 2009 WL 1438209, at * 7 (E.D.N.C. May 20, 2009) (citing Davis v. Apfel, 162 F.3d 1154, 1998 WL 559728, at * 1 (4th Cir. 1998) (unpubl.) (actual treatment sought is probative of credibility)); Stephens v. Astrue, No. 2:06-3123, 2008 WL 68852, at * 12 (D.S.C. Jan. 4, 2008) ("In evaluating the credibility of a Social Security disability claimant's subjective complaints, an ALJ is not precluded from considering whether the claimant complied with her prescribed treatment.").

However, "if noncompliance is to be a basis for denying benefits, the Secretary must develop a record establishing by substantial evidence that the claimant's impairment 'is reasonably remedial by the particular individual involved, given…her social or psychological situation, and that this claimant lacks good cause for failing to follow a prescribed treatment program." Preston

15

v. Heckler, 769 F.2d 988, 990-991 (4th Cir. 1985) (internal citations omitted).[8]

Here, it does not appear that the ALJ denied Plaintiff benefits based upon her failure to follow prescribed treatment; instead, the ALJ considered Plaintiff's noncompliance with her treatment regime when analyzing Plaintiff's credibility. See AR p. 47 ("The fact that the claimant declined treatment is a circumstantial indicator that the claimant's mental health problems are not as severe as she has alleged."). See Clark v. Colvin, No. 7:13-cv-115, 2014 WL 5307508, at * 3 (E.D.N.C. Oct. 16, 2014) ("The ALJ's credibility assessment, which referenced medical noncompliance but did not solely rely on medical noncompliance to deny benefits, did not violate either [the social security regulations] or *Preston*.") (citing Holbrook v. Colvin, 521 Fed. Appx. 658, 663, n. 5 (10th Cir. 2013) (unpubl.) (ALJ is required to find that prescribed treatment would have restored claimant's ability to work and such treatment was unjustifiably refused "when such noncompliance is cited as a stand-alone basis for denying benefits under 20 C.F.R. §§ 404.1530 and

---

8 The social security regulations provide that "[i]n order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work." 20 C.F.R. § 416.930(a). The Administration's regulations further explain that "[w]here the treating source has prescribed treatment clearly expected to restore" the claimant's ability to work, "but the disabled individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment provided." SSR 82-59, 1982 WL 31384 (1982). "The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment." Id.

16

416.930, not when it is merely part of a credibility assessment.")).

Even if the requirements of <u>Preston</u> applied, however, Plaintiff's medical records reflect a history of non-compliance with medical recommendations[9] and indicate that Plaintiff's symptoms (specifically her complaints of heart palpitations) were likely due to Plaintiff's anxiety,[10] and that Plaintiff's anxiety symptoms improved when she was away from situational stressors.[11] Further, the ALJ provided Plaintiff with an opportunity to discuss her decision to decline treatment for her anxiety during the May 24, 2018 hearing. When asked what sort of treatment she received for her "crippling anxiety," Plaintiff stated that her "cardiologist had mentioned that it is not in my best interest to take medications because of the heart issues" and that she "was told because of my heart condition that I shouldn't take the medication for anxiety." AR p.

---

9 <u>See</u> <u>e.g.</u> AR p. 688 (August 2, 2017 note reflecting that therapist encouraged Plaintiff to see physician's assistant and primary care physician for medication but Plaintiff refused); p. 746 (January 23, 2018 note reflecting "Pt is making no progress and has not been working on agreed upon therapeutic techniques. Pt. needs to continue medication as prescribed…follow up with therapy."); p. 725 (February 9, 2018 treatment note reflecting Plaintiff did not take medications prescribed to her and had not purchased cuff to check blood pressure at home).

10 <u>See</u> AR p. 724 (February 15, 2018 note reflecting that heart palpitations likely due to anxiety).

11 <u>See</u> <u>e.g.</u> AR p. 678 (May 1, 2017 note wherein Plaintiff reported she was doing well, had been in New York for 2 weeks away from her mom and sister and that "since being in NY she is less anxious, less stressed, and while she still has bad days, they aren't as frequent."); p. 686 (June 6, 2017 note wherein Plaintiff reported doing well, she was home alone and felt good about it, and that she was feeling better now that she was away from her mom and sister).

74. However, while multiple records indicate that Plaintiff expressed concern about taking medications for anxiety,[12] the record does not include a treating physician recommendation stating explicitly that Plaintiff not take anxiety medications due to possible complications.[13]

Accordingly, this assignment of error is not persuasive.

### D. Conflict Between the VE Testimony and the DOT

The Dictionary of Occupational Titles ("DOT") and its companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." Pearson v. Colvin, 810 F.3d 204, 205, n. 1 (4th Cir. 2015). Accordingly, "an ALJ must ensure that any 'apparent' conflicts between [these sources] and the VE's testimony are reasonably resolved." Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019).

"The DOT's Reasoning Development scale has six levels: Level 1 requires

---

12 See e.g. AR p. 657 (October 5, 2016 treatment note from Center for Emotional Health reflecting that Plaintiff "wants to be on medication but is afraid due to her heart condition" and reflecting treatment plan of individual therapy and starting initial medication management); p. 674 (May 22, 2017 note from Center for Emotional Health reflecting Plaintiff was afraid to take medication due to her heart condition);

13 In a mental medical source statement, Dr. Jonathan Stoudmire indicates that Plaintiff's prognosis is "not good, if patient were able to take medications, but unable due to heart condition." AR p. 739. However, and in contrast to this statement, in an August 2, 2017 treatment note signed by Dr. Stoudmire, Plaintiff was encouraged to seek medication for anxiety. AR p. 688.

18

the least reasoning ability, and Level 6 requires the most reasoning ability." Richardson v. Berryhill, 5:17-cv-00173-RJC-DSC, 2019 WL 1354042, at * 3 (W.D.N.C. March 26, 2019). Here, the VE identified the representative occupations of unskilled marker, router, and photocopy machine operator. These occupations require a Reasoning Level of 2. DICOT 920.687-126 (G.P.O.), 1991 WL 687992 (marker II); DICOT 222.587-038 (G.P.O.), 1991 WL 672123 (router); DICOT 207.685-014 (G.P.O.), 1991 WL 671745 (photo machine operator).

Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Richardson, 2019 WL 1354042, at * 3. (citing DOT, App. C, 1991 WL 688702, emphasis added by Richardson court). Plaintiff contends that there is an apparent conflict because all three representative occupations "require reasoning at Level 2" and that such reasoning ability conflicts with Plaintiff's limitation to "simple, routine and repetitive tasks." Doc. 12, p. 27.

Plaintiff's argument – that an RFC limitation to "simple, routine, and repetitive tasks" is in conflict the ability "to carry out detailed but uninvolved written or oral instructions" – has been rejected. See Lawrence v. Saul, 941 F.3d 140, 143-44 (4th Cir. 2019) (plaintiff's ability to perform jobs limited to

"simple, routine repetitive tasks of unskilled work" did not conflict with Level 2 reasoning); Waddell v. Saul, 789 Fed. Appx. 959, 960 (4th Cir. 2020) (unpubl.) ("Our recent decision in Lawrence v. Saul, 941 F.3d 140, 142-45 (4th Cir. 2019), forecloses Waddell's claim that there was an apparent conflict between her residual functional capacity as determined by the ALJ and the Reasoning Level 2 jobs identified by the vocational expert."). See also Gilbert v. Berryhill, No. 5:18 CV 159, 2019 WL 7584324, (W.D.N.C. Dec. 27, 2019).

Accordingly, there is no conflict between the VE's testimony and the descriptions of the representative occupations.

## VI.    Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 11) be granted and that the Commissioner's motion for summary judgment (Doc. 14) be denied.

Signed: April 27, 2020

W. Carleton Metcalf
United States Magistrate Judge

20

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).